[No. B208062. Second Dist., Div. Six. Sept. 30, 2009.]

ELIZABETH S. RANDS, Petitioner and Respondent, v.
WILLIAM RANDS, Objector and Appellant.

COUNSEL

Law Offices of Tamila C. Jensen and Tamila C. Jensen for Objector and Appellant.

Benton, Orr, Duval & Buckingham, Thomas E. Olson and Maureen M. Houska for Petitioner and Respondent.

OPINION

**GILBERT, P. J.**—A trust provides that a settlor's incapacity may be established by two physicians' certifications that the person is mentally incapacitated. Revocation of incapacity may be established by two other physicians' certifications that the person is no longer incapacitated.

Two of settlor's treating physicians certify that he is mentally incompetent. A year later, two other physicians certify that he is mentally competent.

Here we conclude the certifications of mental competence are insufficient because neither physician who found mental competence was aware of the earlier certifications of mental incompetence.

William Rands appeals an order of the probate court determining that his revocation of trust is ineffective due to his lack of capacity. We affirm.

## FACTS AND PROCEDURAL HISTORY

William Rands and Elizabeth S. Rands married on August 26, 1978.[1] Each had children from previous marriages, but they did not have children together. At times during the marriage, conflict and rancor existed between each side of the family.

On May 7, 1996, William and Elizabeth settled and executed the Rands Family Trust and, later, an amendment to the trust (Trust). The Trust contained income-producing real properties among other assets. William and Elizabeth were the initial cotrustees.

The Trust provides that in the event of a settlor's incapacity, the other settlor shall become the sole trustee. (Par. 5.1.) The Trust also provides that it is "irrevocable and unamendable" during the period of a settlor's incapacity. (Par. 4.2(A)(c).) The Trust defines "incapacity" as a settlor's inability "to act rationally and prudently in his or her own best interests financially." (Par. 4.2(B)(b).)

The Trust requires determination of incapacity by court order, or by certification by two physicians. Thus, paragraph 4.2(B)(b) provides for evidence of incapacity by: "Duly executed, witnessed, acknowledged written certificates of two licensed physicians, at least one of which is then unrevoked. Each physician must be currently certified by a recognized medical board. Each certificate must verify that such physician has examined the person and concluded that by reason of . . . mental deterioration . . . such person had at the date thereof, become incapacitated (unable to act rationally and prudently in his or her own best interests financially)."

The Trust also provides that incapacity continues until a court rules otherwise, or until the physicians' certifications are revoked. Revocation is

---

[1] We shall refer to the parties by their given names not from disrespect, but to ease the reader's task.

accomplished "by a similar certificate to the effect that that person is no longer incapacitated. It must be executed by either the original certifying physician or by two other licensed, board certified physicians." (Par. 4.2(B).)

In 1998, William received a diagnosis of possible Parkinson's disease. He continued to manage the Trust real properties and household finances, however, until 2001 when he requested Elizabeth to "take over." By then Elizabeth had noticed a progressive decline in William's physical health and cognitive abilities.

Dr. Mark Sobers was William's treating physician from 2001 through 2004 (20 medical visits). He opined that William suffers from a progressive dementia due to Parkinson's disease. At times during medical visits, William was not oriented to time, could not perform simple math problems, and believed that "Charles Schwab" was the President. Sobers noted that William "tends to wander off the subject and is poorly focused." Sobers testified that dementia patients have "good days, their bad days, they are good in some areas, they are bad in some areas. Sometimes a certain part of the brain will deteriorate and the other will be perfectly fine."

On March 25, 2003, Sobers completed and executed a form document entitled "Physician's Determination of Incapacity." The document states that William "is currently incapacitated and unable to manage his . . . finances and property." Although Sobers signed and dated the document, his signature was not witnessed or acknowledged as required by Trust terms. At trial, he testified that he completed and executed the document because he believed its content to be true.

Sobers also testified that William's son requested that he reconsider his conclusion of William's incapacity and revoke the document. Sobers stated that he declined to do so because William continued to suffer from cognitive deficits and dementia.

Dr. J. Timothy Sheehy, a neurologist, treated William between March 2001 and June 2003 (eight medical visits) for Parkinson's disease. In July 2002, Sheehy suspected that William suffered from dementia. On March 24, 2003, Sheehy completed and executed a "Physician's Determination of Incapacity" form. Although he signed and dated the document, his signature was not witnessed or acknowledged. At trial, Sheehy testified that he completed and executed the document because he believed it was an accurate statement of William's condition.

Elizabeth testified that she sought documents attesting to William's incapacity because bank accounts, financial investments, and utilities were in his

name alone. She stated that the physicians' certificates allowed her to manage the Trust property and household finances.

At times in 2002 and 2003, William executed real estate agreements and deeds pertaining to his properties. Elizabeth testified that the agreements and deeds were the culmination of negotiations over the years with family members.

In February and April 2004, Dr. Robert Hutchman, a neurologist specializing in Parkinson's disease, examined and tested William and prescribed medication. Hutchman concluded that William had mild cognitive problems, but not dementia. On April 2, 2004, Hutchman opined in a letter that William "is capable of making important decisions, or in other words, is clinically a personally competent individual."

On April 9, 2004, William's son Randall drove him to Oregon to reside there with him. Elizabeth testified that William did not leave willingly.

Later that month, Randall and William returned to Oxnard to visit Dr. Ju-Sung Wu, a neurologist and psychiatrist. Following a consultation, Dr. Wu wrote a three-page evaluation stating that William "is able to make decisions regarding his health, financial status and he is capable of signing any paperwork or . . . Power of Attorney." Wu noted that William was not confused or disoriented and that his mental status was good.

Later, Randall and William visited a document preparation service. There William executed a revocation of Trust, dated April 27, 2004.

William now lives with his son in Medford, Oregon. In 2004 and 2005, William's treating physicians in Oregon concluded that he did not suffer from progressive dementia. With the passage of time, however, he has suffered two broken hips, a stroke, and serious cognitive decline. The parties agree that as of June 29, 2007, William no longer has legal capacity and will not regain it.

Following consultation with an attorney, Elizabeth filed a petition for legal separation on June 8, 2004. She testified that she intended to preserve Trust property against attacks from her stepchildren. On September 12, 2005, William filed an amended response requesting dissolution of marriage. He also requested the family law court to divide the Trust assets. Elizabeth has not seen William since April 2004, although she had occasional telephone contact with him in 2005.

On September 29, 2005, Elizabeth filed a petition for instructions regarding the validity of the revocation and William's capacity, among other things. The

probate court consolidated the family law proceedings with the proceedings regarding the Trust. After presentation of evidence, including witness testimony, the probate court determined that William lacked capacity on April 27, 2004, to revoke the Trust. In ruling, the court reasoned in part that Drs. Hutchman and Wu "were denied the opportunity to consider the fact that [Drs.] Sobers and Sheehy had previously found William Rands to lack capacity."

William appeals and contends that the probate court erred by finding that he lacked capacity to revoke the Trust.

## DISCUSSION

### I.

William argues that the trial court erred by finding that the letters of Drs. Hutchman and Wu were insufficient to revoke the letters of Drs. Sobers and Sheehy. He asserts that the trial court mistakenly believed that the Trust requires that physicians making capacity determinations be provided determinations previously made by other physicians. (*Estate of Powell* (2000) 83 Cal.App.4th 1434, 1440 [100 Cal.Rptr.2d 501] [interpretation of trust seeks settlor's intent as revealed in document considered as a whole].)

In interpreting a written instrument, including a declaration of trust, we determine and give effect to the intent of the settlor. (*Scharlin v. Superior Court* (1992) 9 Cal.App.4th 162, 168 [11 Cal.Rptr.2d 448].) The interpretation of a written instrument is a question of law unless the interpretation depends upon conflicting extrinsic evidence. We construe the instrument independently. (*Ibid.*)

The trial court did not err by finding the Hutchman and Wu letters insufficient to revoke the letters provided by Sobers and Sheehy. Paragraph 4.2(B) of the Trust provides that revocation is effected "by a similar certificate to the effect that that person is no longer incapacitated." The language of the Trust requires that subsequent letters revoke earlier letters. The obvious purpose of the requirement is that subsequent evaluating physicians acknowledge there is a change in or recovery of capacity. Neither Dr. Hutchman nor Dr. Wu knew of the earlier letters nor did they revoke them.

### II.

William asserts that the trial court erred by speculating upon the opinions that Hutchman and Wu would have formed had they known that Sobers and

Sheehy had already determined that he lacked capacity. He points to this statement in the court's ruling: "The Court is not persuaded that Drs. Hutchman, Wu, Peard, Sanchez or Davis would have come to their same conclusion had they had the benefit of the findings by Sobers and Sheehy."

We do not interpret the court's comment as speculation or conjecture. Indeed it makes the point that the court could not know what the opinions of other physicians would have been had they known they were attesting to a revocation of incapacity. In any event, the comment is harmless error.

### III.

William contends that the trial court erred by ignoring the Trust requirements for physician certifications of incapacity. He points to the requirements of paragraph 4.2(B)(b) that the "executed, witnessed, [and] acknowledged" certifications must "verify" that the physician has examined the person and concluded that he is "unable to act rationally and prudently in his or her own best interests financially." William correctly asserts that the Sobers and Sheehy letters are neither witnessed nor acknowledged. He asserts that neither physician performed a capacity examination prior to executing the certification.

The lack of witnessing or acknowledgement does not invalidate Sobers's and Sheehy's certifications of incapacity because the certifications fulfilled the settlors' intent of reliable and credible evidence of incapacity. At trial, Sobers and Sheehy testified that they executed and dated the certifications because they believed them to be true.

Moreover, Sobers and Sheehy were William's treating physicians and each had examined him frequently over a period of years. Each physician administered "Mini-Mental Status Examinations" to William over the course of treatment, with varying results. The trial court heard the testimony of William's physicians and received evidence of physician notes and charts. The weight of the evidence and the credibility of expert witnesses are matters for the trial court. (*City and County of San Francisco v. Ballard* (2006) 136 Cal.App.4th 381, 396 [39 Cal.Rptr.3d 1].) Sufficient evidence supports the trial court's finding that Drs. Sobers and Sheehy executed capacity certifications consistent with Trust requirements.

### IV.

William argues that the trial court erred by finding that he lacked capacity to revoke the Trust. He asserts the trial court did not apply the factors set forth in Probate Code section 811 regarding a court finding of incompetency.

In finding William's revocation of trust ineffective, the trial court relied upon the certifications of Sobers and Sheehy, which in turn rest upon the requirements of the Trust. The court did not make an original finding of incompetency resting upon the requirements of Probate Code section 811.

The order is affirmed. Respondent shall recover costs on appeal.

Yegan, J., and Coffee, J., concurred.